## Sheaffer Appeal.

Argued March 13, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*A. R. Cingolani, Jr.*, with him *Cingolani & Cingolani*, for appellant.

*Frank P. Krizner*, with him *McCandless, Chew & Krizner*, for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, May 23, 1973:

The appellant gave birth to a male child on February 6, 1970. The child, Robbie, was conceived and born out of wedlock. During her pregnancy appellant was referred to the Butler County Bureau of Children's Services ("Bureau"). Appellant gave custody to the Bureau and her son was placed in foster care on February 17, 1970. Appellant signed a "Parent's Placement Agreement" on February 20, 1970, which provided for temporary placement of the child, but permitted removal from foster care by appellant upon ten days' prior notice to the Bureau. On the same date appellant

signed a "consent to adoption".[1] On June 9, 1970, at the Bureau's request, appellant signed a "specific consent of [the] mother" to adoption by the foster parents.[2]

On December 31, 1970, appellant changed her relinquishment decision and contacted an attorney to determine whether she could recant her approval of adoption proceedings. In January of 1971 appellant manifested her change of position by informing Bureau caseworker, Diann Morse, that she intended to keep her child. By January of 1972 the appellant had manifested a definite plan to regain custody of her child by April 1, 1972, and was told that the Bureau would "work toward that date".[3]

A petition for *involuntary* termination of parental rights, filed by the Bureau on March 23, 1972, charged the following:

---

[1] The consent form purported to give appellant's approval to the adoption of Robbie by unspecified persons.

". . .

"3. That I am informed that .............. have proposed to adopt the said *Baby Boy* . . . , a minor.

"4. That I do hereby irrevocably consent to the proposed adoption so the said *Baby Boy.* . . . , a minor, shall enjoy all the rights and privileges of a child and heirs-at-law of the said ......
.........., and be thereafter known as and subject to the duties of a child of the said ...................

". . .

(s) [appellant]"

[2] This document provided in pertinent part as follows: "[T]hat [appellant] hereby consents to the adoption of [her] minor child by the family in whose home the child was placed by the Butler County Child Welfare Agency on .................., and in whose home the child is on this date. . . ."

[3] Appellant was also instructed by the Bureau to institute fornication and bastardy proceedings against the child's father. She testified that the bringing of charges was a necessary prerequisite to the Bureau's permitting her to keep the child: "In order to keep the baby, I had to go ahead and file the charge against his father. . . ."

"A. That the said [appellant] has, by conduct continuing for two years, evidenced a settled purpose of relinquishing parental claim to the child and has refused or failed to adequately fulfill the role of parent.

. . .

"B. That the repeated and continued incapacity, abuse, neglect or refusal of [appellant] which cannot or will not be remedied, has caused said Child [sic] to be without essential parental care. . . ." The court below determined that appellant *abandoned* her child within the meaning of the Adoption Act of 1970,[4] and its precursor,[5] and terminated her parental rights. Though raised by the appellee in its petition for involuntary termination, the court below did not pass upon the question of whether appellant has exhibited such a continued and irremedial parental incapacity as to justify the termination of parental rights. Act of July 21, 1970, P. L. 620, §311, 1 P.S. §311(2); *see Jones Appeal,* 449 Pa. 543, 297 A. 2d 117 (1972). Thus, the only question properly before us is whether the appellant has abandoned her child within the meaning of Section 311 of the 1970 Adoption Act.[6]

While there was considerable evidence in the court below respecting the appellant's emotional instability and physical handicap,[7] the welfare of the child and the appellant's fitness as a parent have no relationship to the issue of abandonment in adoption proceedings.

---

[4] Act of July 21, 1970, P. L. 620, §311, 1 P.S. §311(1).

[5] Act of April 4, 1925, P. L. 127, §2, *as amended,* 1 P.S. §2(c), *repealed,* Act of July 24, 1970, P. L. 620, §601, 1 P.S. §601.

[6] The court below made a factual determination of abandonment under the Adoption Act of 1970, effective January 1, 1971 (*Id.* §603, 1 P.S. §603), and its forerunner. Since this petition for involuntary termination was not filed until March 23, 1972, the former Act is inapplicable. We need only consider the provisions of the 1970 Act.

[7] Appellant is afflicted with congenital cataracts which have left her almost blind without corrective lenses.

*Sarver Adoption Case*, 444 Pa. 507, 281 A. 2d 890
(1971); *Schwab Adoption Case*, 355 Pa. 534, 50 A. 2d
504 (1947). The scope of our review is limited to a
consideration of the testimony on the issue of whether
the court's finding of abandonment is supported by
competent evidence. *Vaders Adoption Case*, 444 Pa.
428, 282 A. 2d 359 (1971); *Hookey Adoption Case*, 419
Pa. 583, 215 A. 2d 860 (1966); *Harvey Adoption Case*,
375 Pa. 1, 99 A. 2d 276 (1953).

Section 311 of the Adoption Act of 1970 provides
for involuntary termination where the parent, "by con-
duct continuing for a period of at least six months
either has evidenced a settled purpose of relinquishing
parental claim to a child, or has refused or failed to
perform parental duties. . . ." We do not believe that
the evidence offered for the proposition that appellant
abandoned her child is the quality of evidence intended
by the legislature to justify an enforced permanent sev-
erance of parental rights on grounds of abandonment.

The appellee's abandonment averments may be sum-
marized as follows: (1) appellant has failed to provide
a suitable home for her child since his birth, a period
in excess of the six-month statutory period; (2) since
placing the child in foster care the appellant has vacil-
lated on the decision of whether to keep her child; and
(3) appellant's emotional instability and physical im-
pediment render her incapable of maintaining a suit-
able environment for this child. We have already noted
that the child's welfare is irrelevant to the issue of
abandonment. Thus, we may not consider the allegation
that appellant would not be a suitable parent. The re-
maining specific allegations of abandonment necessi-
tate a resolution of the question of whether appellant's
recanted *voluntary* termination can support a decree of
*involuntary* termination on grounds of abandonment
where appellant relinquished custody of her child to the
Bureau for a period in excess of six months. We hold

that there is no abandonment under these circumstances.

In addition to *involuntary* termination for parental incapacity or abandonment, the legislature promulgated a procedure for *voluntary* relinquishment by the written consent of the natural parent. Act of July 24, 1970, P. L. 620, §301, 1 P.S. §301. To insure an intelligent, voluntary and deliberate consent to the termination of parental rights (*see Watson Appeal*, 450 Pa. 579, 301 A. 2d 861 (1973)), the legislature has required a hearing on the petition for *voluntary* relinquishment. *Id.* §303. In the present case, pursuant to the Adoption Act, appellant placed her son in the care of the Butler County Bureau of Children's Services on February 17, 1970, and twice furnished written consent to the child's adoption. Before the hearing and decree of termination by the court, the appellant manifested an intent to halt the *voluntary* termination proceedings. The appellee urges that the child's placement in the Bureau's custody for a period of more than six months "has evidenced a settled purpose of relinquishing parental claim to [the] child" and justifies a decree of *involuntary* termination. We disagree.

An adjudication of abandonment necessitates a finding of neglect coupled with an affirmative indication of a positive intent to abandon the child. *Vaders Adoption Case*, supra; *Hangartner Adoption Case*, 407 Pa. 601, 181 A. 2d 280 (1962) ; *Harvey Adoption Case*, supra. We find neither neglect nor the intent to abandon in this situation. Appellant placed her child with the Bureau pending a final decree in her petition for *voluntary* relinquishment. She properly withdrew her petition before a final decree was entered. That the period of time between the child's placement in foster care and the withdrawal of appellant's consent exceeded six months cannot, in itself, support a decree of *involuntary* termination. Accordingly, we vacate the decree of

*involuntary* termination of parental rights *by abandonment*. However, the appellee, petitioner in the court below, properly raised the issue of *parental incapacity* as an alternative basis for a decree of involuntary termination. The court, by its decree and opinion, did not speak to the issue. We believe the court below should permit the appellee to have the opportunity to pursue the issue of whether the appellant has evidenced a *continued and irremedial parental incapacity* as would justify a decree of involuntary termination under Section 311(2) of the Adoption Act of 1970.

Decree vacated and case remanded for action consistent with this opinion. Each party to pay own costs.