387 A.2d 873

**In re ADOPTION OF BABY BOY P., a minor.**

**Appeal of CONSTANCE P.**

Supreme Court of Pennsylvania.

Argued Sept. 27, 1977.

Decided June 5, 1978.

Timothy P. Hennessy, Southwestern Pennsylvania, Legal Aid Society, Washington, for appellant.

Frank A. Conte, Washington, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

This appeal arises from an order of the Orphans' Court division of the Court of Common Pleas of Washington County, which involuntarily terminated the parental rights of appellant, Constance P.

On September 9, 1975, appellees, the proposed adopting parents, filed a petition for involuntary termination of parental rights against the natural parents of Baby Boy P. Appellees sought the termination of the natural parents' rights so that they could adopt the minor child. Following a hearing, the court entered an order terminating the parental rights of both natural parents. Appellant filed exceptions which were denied, and this appeal followed.[1]

The facts are as follows. In 1973, appellant, a thirty-one year old legal secretary, became pregnant. In an attempt to terminate the pregnancy, she sought an abortion. An abortion was attempted, but was unsuccessful. Appellant informed her physician that she did not want to keep the baby. Appellant and her physician reached an agreement where upon birth of the child, she would turn over the baby to the doctor for placement and eventual adoption. At sometime during her pregnancy, appellant quit her job and went on public assistance.

On March 1, 1974, appellant gave birth to Baby Boy P. She left the hospital the next day and gave the baby to her doctor, who placed the infant with appellees.

During the ensuing year, appellant visited her doctor at least twice, but never mentioned the child or inquired as to his whereabouts. In February of 1975, appellant was contacted by appellees' attorney about signing a consent form for the child's adoption. While appellant expressed concern for the child's welfare, she never asked to see the child.

In June, 1975, appellant requested $3,000 from appellees in return for her consent to the adoption. Appellees refused the request. In July, 1975, appellant wrote a letter to her doctor, asking the whereabouts of the child.

A hearing on the involuntary termination petition was scheduled for September 29, 1975, but was rescheduled for December 4, 1975, upon the informal request of appellant. Appellant did nothing to regain custody until December 2, 1975 (twenty-one months after the child's birth), when,

1. This case was assigned to this writer on March 17, 1978.

through her attorney, she requested another continuance until January 28, 1976.

The Legislature has provided for involuntary termination of parental rights on the following grounds:

"(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties; or

"(2) The repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being and the conditions and cause of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parent; or

"(3) The parent is the presumptive but not the natural father of the child." Act of July 24, 1970, P.L. 620, No. 208, Art. III, § 311, 1 P.S. § 311 (Supp.1977–78).

Appellant claims, however, that the evidence was insufficient to support the court's order involuntarily terminating all parental rights. We do not agree.

■ Our scope of review is limited to determining whether the court's order is supported by competent evidence. *In Re: Adoption of M.T.T.*, 467 Pa. 88, 354 A.2d 564 (1976). As this court stated in the case of *In Re: Burns*, 474 Pa. 615, 379 A.2d 535, 540 (1977):

"There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. . . . This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a

parent 'exert himself to take and maintain a place of importance in the child's life.'" (Citations omitted.)

In the instant case, appellant did nothing in regards to her child during the first year and a half of his life except to demand payment of $3,000 in return for her consenting to the child's adoption. Under these circumstances, we believe the court below had sufficient evidence to terminate appellant's parental rights.

Decree affirmed. Each party to bear own costs.

MANDERINO, J., took no part in the decision of this case.