424 A.2d 878

**In re ADOPTION OF J. S. M., JR., a Minor.**

Supreme Court of Pennsylvania.

Argued Sept. 29, 1980.

Decided Jan. 30, 1981.

---

314

Lorraine D. Taylor, Neighborhood Legal Services, McKeesport, for appellant.

Ira Weiss, Pittsburgh, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFMANN, JJ.

## OPINION OF THE COURT

NIX, Justice.

In this matter, the Orphans' Court Division of the Court of Common Pleas of Allegheny County involuntarily terminated the parental rights of the natural father pursuant to § 311(1) of the Adoption Act, Act of July 24, 1970, P.L. 620, § 311(1), 1 P.S. § 311(1) (Supp. 1980–81). In this direct appeal, the natural father seeks to challenge the validity of that determination. The question in this case is whether the record reflects that the conduct of the mother of the child posed a legally sufficient barrier so as to preclude appellant from performing his required parental duties.

J. S. M., Jr., was born on December 6, 1968, the second child of James Steven Mursch, Sr. and Veronica Mursch, now Veronica Elkowitz. The parents separated about nine

months after the birth of the child in question and were divorced on December 23, 1969. The mother remarried, and her new husband, Joseph E. Elkowitz, initiated this proceeding by attempting to adopt J. S. M., Jr. Appellant has also since remarried.

Section 311(1) provides:

The rights of a parent in regard to a child may be terminated . . ., on the ground that: (1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties."

Under this provision, it must be established that for a period of six months, appellant either evidenced a settled purpose of relinquishment of his parental claim or that he has refused or failed to perform his parental duties. *Matter of Adoption of David C.*, 479 Pa. 1, 387 A.2d 804 (1978); *In re A. M. B.*, 479 Pa. 193, 387 A.2d 1289 (1978) (Opinion in Support of Reversal); *In re Adoption of M. T. T.*, 467 Pa. 88, 354 A.2d 564 (1976). Since these clauses have been interpreted as being in the alternative, the chancellor's finding can be sustained if either is satisfied on this record.

Our scope of review in these matters has been clearly defined. We are limited to determining whether the Orphans' Court's termination of appellant's parental rights is supported by competent evidence. *In re Adoption of Baby Boy P.*, 479 Pa. 138, 387 A.2d 873 (1978); *In re William L.*, 477 Pa. 322, 383 A.2d 1228 (1978); *In re Adoption of M. T. T., supra; In re Adoption of Farabelli*, 460 Pa. 423, 333 A.2d 846 (1975); *Sheaffer Appeal*, 452 Pa. 165, 305 A.2d 36 (1973). Moreover, unless that court abused its discretion or committed an error of law, such findings are entitled to the same weight given a jury verdict. *In re D. J. Y.*, 487 Pa. 125, 408 A.2d 1387 (1979); *Adoption of R. H.*, 485 Pa. 157, 401 A.2d 341 (1979); *In re William L., supra.* A party seeking to adopt must establish the statutory requirements for involuntary termination by a preponderance of the evidence. *In re D. J. Y., supra; Adoption of Baby Girl Fleming*, 471 Pa. 73,

369 A.2d 1200 (1977); *Adoption of McAhren,* 460 Pa. 63, 331 A.2d 419 (1975); *Adoption of McCray,* 460 Pa. 210, 331 A.2d 652 (1975).

■■■ On this record, it is virtually uncontroverted that the natural father had no significant contacts with his child for a period far in excess of the statutory six months. Nevertheless, our law recognizes there may be situations where the parent who has custody of the minor may create such barriers as to impede communications between the absent parent and the child. Where the absence of communication results from the deliberate conduct of the opposing parent, it may not be used as a basis for termination of parental rights, even when the lack of contact may have extended significantly beyond the statutory period. *In re D. J. Y., supra; Adoption of S. H.,* 476 Pa. 608, 383 A.2d 529 (1978); (natural parent on several occasions was unable to contact the child due to the action of the former spouse and mother-in-law); *In re Adoption of Farabelli, supra.* Parenthood is too precious a right to be withdrawn on the basis of a sterile rule of thumb that ignores the realities of the circumstances. *In re Burns,* 474 Pa. 615, 379 A.2d 535 (1977); *see also In re Adoption of Farabelli, supra* (parents excused from performing parental duties where efforts to contact child would cause the child's living situation to deteriorate). A parent's efforts in maintaining a relationship with the child must always be evaluated in light of the obstacles confronting that parent. *See, Adoption of S. H., supra.*

These considerations must be weighed against the obligation of the non-custodial parent to make an affirmative effort to exert himself to take a place of importance in the child's life. *In re D. J. Y., supra; Adoption of S. H., supra; Matter of Adoption of David C., supra.* There is, therefore, a need for the record to demonstrate that reasonable resolve was reflected in the actions of the parent in question, to overcome those impediments to a relationship with the child which would permit that parent to remain a positive force in the life of the child. *In re D. J. Y., supra; Adoption of S. H., supra.*

In the instant case, the father stopped visiting his child for a period of approximately six years prior to the hearing. He provided no support, did not attempt to communicate, nor did he exhibit any other type of serious concern for the well-being of the child. Appellant argues that his ex-wife placed numerous obstacles in his path, including threats of police action, verbal abuse, and moving to a new residence unknown to him. However, the record reflects that this version of the relationship was not uncontroverted. There was testimony in the record that the police action referred to by appellant resulted because he attempted to visit the child at a time when he was under the influence of alcohol and became unruly. Moreover, although the mother did move to a second address, she remained in the same general neighborhood where it would appear that reasonable diligence would have easily produced the new address, if there had been a sincere effort made towards that end.

While the court recognized that there were gifts of money made by appellant's parents to the child early in the separation, no letters, cards or gifts were forwarded directly by the father. Moreover, there was a basis in the record for the court to conclude, as it did, that the grandparents' actions were not primarily inspired at the behest of appellant. Under such circumstances, a finding of a refusal or a failure to perform parental duties, within the statutory period, was clearly supportable. Moreover, there was also a basis for the chancellor to reject the proffered explanation for this failure.

Appellant relies heavily on the opinion of this Court in *In re D. J. Y., supra.* In that case, we did sustain a refusal to terminate parental rights where a mother did not have contact with a child from 1974 to 1977. There, too, the absent parent offered an explanation for that failure. At that point, the similarities end. The court below in *In re D. J. Y., supra,* accepted the credibility of the testimony offered by the non-custodial parent to establish the excuse, and the record supported those findings. Here, the Court rejected

the credibility of the evidence offered to establish the excuse for appellant's derelictions and the record here supports that rejection. In light of our scope of review, there is no reason to disturb the finding made by the learned chancellor in this case.

Accordingly, the decree is affirmed.